# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

AMANDA WELLS, on behalf of )
C.D.W., a Minor Child, )
                                         )
            Plaintiff, )
                                         )
         vs. )         Case No. 13-cv-530-GKF-TLW
                                         )
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
                                         )
           Defendant. )

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Amanda Wells, on behalf of C.D.W., a minor child, seeks judicial review of the Commissioner of the Social Security Administration's decision finding that C.D.W. is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **AFFIRMED**.

## INTRODUCTION

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

1

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

**Sequential Evaluation for Child's Disability Benefits**

The procedures for evaluating disability for children are set out at 20 C.F.R. § 416.924(a). The first step is to determine whether the child is performing substantial gainful activity. If not, the next consideration is whether the child has a "severe" mental or physical impairment. A "severe" impairment is one that causes more than minimal functional limitations. If a "severe" impairment is identified, the claim is reviewed to determine whether the child has an impairment that: (1) meets, medically equals, or functionally equals the listings of impairments for children;[1] and (2) meets the duration requirement.

If the child does not have impairments of a severity to meet a listing, the severity of the limitations imposed by impairments are analyzed to determine whether they functionally equal a listing. Six broad areas of functioning, called domains, are considered to assess what a child can and cannot do. Impairments functionally equal a listing when the impairments result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. The

---

[1] The listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively demonstrate disability. 20 C.F.R. Pt. 404, Subpt. P, App.1.

six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A limitation is "marked" when it interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

## BACKGROUND INFORMATION

Plaintiff, then a 4-year old male, applied (through his mother) for Title XVI benefits on November 10, 2010, alleging a disability onset date of October 18, 2010. (R. 104-09). Plaintiff claimed that he was disabled due to ADHD, ODD, and depression. (R. 171). Plaintiff's claim for benefits was denied initially on May 11, 2011, and on reconsideration on July 18, 2011. (R. 56-57, 58-61, 68-71). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on May 31, 2012. (R. 38-55). The ALJ issued a decision on June 15, 2012, denying benefits and finding plaintiff not disabled because he did not have the requisite limitations in the domains of functioning. (R. 14-30). For a child to qualify as disabled, he must have a marked limitation in two domains of functioning or one extreme limitation. (R.18). The Appeals Council denied review, and plaintiff appealed. (R. 1-4); (dkt. 2).

Plaintiff raises two issues on appeal: (1) that the ALJ failed to make proper credibility findings; and (2) that the ALJ's decision is not supported by substantial evidence because the ALJ did not develop the record and improperly relied on the consultative examination report. (Dkt. 18).

**The ALJ's Decision**

The ALJ found that plaintiff, a preschooler, had not engaged in any substantial gainful activity since October 18, 2010.[2] (R. 20). The ALJ determined that plaintiff had severe impairments of attention deficit hyperactivity disorder ("ADHD") and oppositional defiance disorder ("ODD"). Id. The ALJ noted that plaintiff's mother originally sought treatment for plaintiff in July 2, 2010, "for behavioral concerns." Id. At that time, plaintiff's physician suspected the issue was "inconsistent discipline." Id. Plaintiff was diagnosed with ODD and ADHD in October 2010, and a psychological consultative examination performed in April 2011 was consistent with ADHD. Id. Plaintiff's impairments, however, did not meet or medically equal a listing. Id.

The ALJ then reviewed the testimony and record evidence. (R. 21-22). Plaintiff's mother testified that plaintiff sees a doctor "every three months for medication monitoring." (R. 21). She testified further that plaintiff's medications were not very effective. Id. The medication would "wear[] off" and made plaintiff "sluggish and depressed." Id. Behaviorally, plaintiff was aggressive and did not play well with other children. Id. Plaintiff "hits himself when he gets in trouble, has broken lamps, stole a toy and has been mean to their two dogs." Id. The ALJ had no reports from teachers or daycare providers. (R. 22).

The ALJ determined that this testimony was not entirely credible based on two notes in the medical evidence. (R. 21-22). First, plaintiff's mother reported in April 2011 "that when the claimant was on medication he behaved better." (R. 22). Additionally, in April 2012, the month before the ALJ hearing, plaintiff's psychologist "noted that the claimant was much improved on medication." Id.

---

[2] The ALJ identified this date as the date of application, but October 18, 2010, is plaintiff's alleged disability onset date. (R. 104-09). This technical error has no bearing on the outcome of the case.

4

Next, the ALJ discussed the six domains of functioning. (R. 22-26). The ALJ found that plaintiff had less than a marked limitation in the area of acquiring and using information. (R. 22). The ALJ relied on the consultative psychological examination, which showed no evidence of a limitation. (R. 23). The ALJ also noted that plaintiff had submitted no school or daycare records. Id.

The ALJ also found that plaintiff had a less than marked limitation in attending and completing tasks. Id. The ALJ again cited the consultative psychological examination. Id. The ALJ also relied on the mother's statement that plaintiff's behavior was improved with medication and the treating psychologist's note that plaintiff was "much improved" on his medication. Id.

Plaintiff had a less than marked limitation in the area of interacting and relating with others. (R. 24). The ALJ again relied on the consultative psychological evaluation, which stated that plaintiff's "behavior was appropriate and within normal limits." Id.

Plaintiff had no limitations in the last three domains of functioning: moving about and manipulating objects; caring for yourself; and health and physical well-being. (R. 24-26).

Because plaintiff did not demonstrate a marked limitation in two domains of functioning or an extreme limitation in a single domain of functioning, the ALJ found plaintiff not disabled. (R. 27).

**The ALJ Hearing**

The ALJ held the hearing on May 31, 2012. (R. 38-55). As an initial matter, plaintiff's attorney and the ALJ discussed plaintiff's school records. (R. 42). Both plaintiff's attorney and the agency had attempted to obtain plaintiff's preschool records with no response. Id. However, the school had advised the mother that plaintiff's records were destroyed in a flood. Id.

Plaintiff's attorney concluded the discussion by stating that he "wasn't able to get anything regarding the expulsion." (R. 43).

Plaintiff's mother was the sole witness. She testified that plaintiff was five years old and would be enrolled in kindergarten in the fall. (R. 42). Plaintiff was receiving treatment from Dr. Shadid, a child psychiatrist. (R. 43). She took plaintiff for monthly prescription refill appointments, but Dr. Shadid treated plaintiff only once every three months. Id. At the time of the hearing, plaintiff was taking 36mg of Concerta, 10mg of Zoloft, and Clonidine. (R. 44). Clonidine helped him sleep at night. Id.

Plaintiff's mother testified that plaintiff had "good days and bad days" with Concerta but that it was not effective for more than a month or two. Id. After that, plaintiff required an increased dosage. Id. She also testified that the medication took an hour or more to start working in the mornings and would wear off by the afternoon hours. Id. She stated that plaintiff was "sluggish" and "zoned out" in the afternoons. Id. Plaintiff was also prone to crying and depression in the afternoon. Id.

Plaintiff's mother sought treatment with Dr. Shadid because plaintiff was fidgety, defiant, and angry. (R. 46). She stated that his behavior had always been "extreme." Id. Plaintiff had been expelled from preschool. Id. Plaintiff's mother received numerous calls approximately every other week from the preschool with complaints that plaintiff was biting other children, fighting over toys, pushing children off bicycles, and kicking and hitting a pregnant teacher. (R. 47). He was expelled after fighting with another child and refusing to come down from a jungle gym. Id. Plaintiff's mother had to come to the school to "talk him down." Id.

Plaintiff's mother stated that plaintiff is too rough and aggressive with other children, pushing and kicking them. (R. 48). He also has difficulty sharing toys. Id. When plaintiff's

6

medication wears off, he often tells his mother that he has no friends and that other children hate him. Id. Plaintiff's mother reported that plaintiff expressed sadness about his inability to make friends. Id.

Plaintiff is destructive when he was angry. (R. 49). He has broken windows, lamps, toys, and clocks. Id. He also hits himself or will "bang his head on a wall or the floor." (R. 48). He also tried to hurt one of the puppies in the home by picking it up by the head. (R. 50).

Plaintiff's mother stated that the trigger for his behavior is being "told something that he doesn't want to hear." (R. 48-49). She had tried multiple disciplinary tactics, including lectures, rewards for good behavior, and time outs. (R. 49). Taking away video games or computer time was more effective, but it also triggered plaintiff to start hitting himself or his mother. Id.

Finally, plaintiff's mother testified about his impulsive behavior. (R. 50). He has a tendency to "run off." Id. On one occasion he ran across a busy street to a dollar store and stole a toy gun. (R. 51). Plaintiff's mother described plaintiff as fearless, which leads him to engage in dangerous behavior such as "running across the street when cars are coming" or climbing the side of the family's apartment building. (R. 52-53).

Plaintiff's mother was seeking to have plaintiff tested for autism. (R. 51). She was also considering the treating psychiatrist's recommendation[3] to place plaintiff in an inpatient facility for observation. (R. 49). Plaintiff's medications treated his ADHD but had no impact on his ODD. (R. 53). The medications also decrease his appetite and cause him to behave as though he is "zoned" out. (R. 52).

**Plaintiff's Medical Records**

Plaintiff's mother initially voiced concerns about plaintiff's behavioral issues to his pediatrician at a well-child check in September 2009. (R. 188). At that time, plaintiff's mother

---

[3] This recommendation is not noted in any of plaintiff's medical records.

reported that plaintiff "[w]as having trouble sharing at daycare as he just started 3 months ago," but she also reported that he was improving. Id. Plaintiff's mother also stated that she was "working on consistent discipline at home, removing him from the situation that causes trouble and sitting in time-out for 3 minutes." Id. Plaintiff was responding to the time-out method. Id.

Plaintiff's mother returned to the pediatrician's office in July 2010, complaining of behavioral concerns. (R. 183). Plaintiff's mom reported that he was aggressive, throwing tantrums, and refusing to listen. Id. His behavior was worse after spending time at his father's house. Id. During the examination, the doctor noted that plaintiff was "active around the room, responds to me with stern, direct speaking. Pouts and throws tantrums with mom." (R. 184). The pediatrician suspected "inconsistent discipline" and discussed her recommendations with plaintiff's mother. (R. 185). The pediatrician made a note to see plaintiff in two months for a re-evaluation. Id.

Instead, plaintiff's mother took plaintiff to Dr. David Shadid, a child psychiatrist, in October 2010. (R. 231-41, 248-58). At plaintiff's initial appointment, Dr. Shadid diagnosed plaintiff with ADHD and ODD and prescribed Adderall. (R. 238). He also recommended outpatient therapy. Id. Dr. Shadid increased plaintiff's Adderall in December 2010, and plaintiff's mother reported that the increased medication was "good/awesome." (R. 234, 236). In October 2011, Dr. Shadid discontinued Adderall and prescribed Concerta because plaintiff was still biting, hitting, and throwing tantrums. (R. 254-55). In December 2011, plaintiff's symptoms still had not improved, so Dr. Shadid increased his Concerta dosage and added Clonidine for use at bedtime. (R. 249). Plaintiff's new medications eventually improved his behavior. (R. 260-61). In February 2012, plaintiff's mother was still complaining of behavioral problems, including plaintiff's expulsion from school and his attempts to start a fire at home. (R. 262-63). By April

2012, plaintiff showed no symptoms of ADHD and reported no behavioral issues. (R. 260-61). Dr. Shadid noted that plaintiff was "much improved." (R. 261).

While plaintiff was being treated by Dr. Shadid, he also attended a consultative psychological examination in April 2011. (R. 226-30). Plaintiff's mother reported that plaintiff was "usually in trouble" at school but that she had stopped receiving "bad behavior calls" since plaintiff started taking medication. (R. 227). Plaintiff's mother also reported that plaintiff was still struggling with routine and discipline at home. (R. 226). The consultative examining psychologist observed plaintiff throughout the appointment and found that "[h]is behavior was appropriate and within normal limits." (R. 227). Plaintiff played with Legos and "was pleasant and talkative." Id. Plaintiff also volunteered to clean up the Legos before playing with another toy and responded with "you're welcome" when thanked for his behavior. Id.

## ANALYSIS

On appeal, plaintiff argues that the ALJ failed to make proper credibility findings. Plaintiff also argues that the ALJ's decision is not supported by substantial evidence.

### **Credibility Findings**

In child disability cases, the testimony of a parent or other adult most familiar with the child is often used in lieu of the claimant's testimony regarding symptoms. See 20 C.F.R. §§ 416.924a(a) and 416.928(a). The ALJ should also consider the opinions of other nonmedical sources, such as teachers. See 20 C.F.R. § 416.924a(a). The ALJ's failure to provide specific credibility findings is not ordinarily recognized as harmless error in the Tenth Circuit. See Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001). Briggs holds that that where a parent, the person most familiar with the child, is giving testimony regarding the child's

symptoms, "the ALJ *must* make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." Id. (emphasis added).

The Tenth Circuit reiterated this position recently in Bledsoe ex rel. J.D.B. v. Colvin, 544 Fed.Appx. 823 (10th Cir. 2013) (unpublished).[4] In Bledsoe, the ALJ made no credibility findings about the mother's testimony, although he "did provide a narrative summary." Id. at 825. The Tenth Circuit found that the narrative was "insufficient to fulfill the ALJ's duty to perform a credibility analysis." Id. The Tenth Circuit also rejected the Commissioner's argument that the ALJ's failure was harmless error because it did not demonstrate that the child claimant was disabled. See id. The Tenth Circuit refused to apply the harmless error analysis because the record contained specific, relevant testimony from the mother that the ALJ failed to discuss or evaluate. See id. The Tenth Circuit opined that the mother's testimony about the child's continued failing grades could, in the eyes of a reasonable administrative factfinder, support a finding of disability. See id. at 825-26.

In this case, the ALJ made brief credibility findings. The ALJ found plaintiff's mother "not entirely credible" and cited two statements from the record. (R. 21-22). The first statement was one that plaintiff's mother made to the consultative examining psychologist, in which she reported that plaintiff's behavior was better when he was on his medication. (R. 22). The second statement was one that Dr. Shadid included in the April 11, 2012, treatment notes, in which he found plaintiff "much improved" on medication. Id.

This Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary

---

[4] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

10

of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Here, the ALJ's findings, though brief, take into account at least three of the credibility factors: the effectiveness of plaintiff's medication, the consistency of the mother's testimony with the objective medical evidence, and the inconsistency between the mother's testimony and her previous statements. While the ALJ could have provided more detailed findings, the undersigned cannot say that the ALJ's credibility findings are insufficient or not supported by substantial evidence.

**Substantial Evidence In Support of Decision**

Plaintiff's argument that the ALJ's decision is not supported by substantial evidence includes three sub-points: (1) that the ALJ did not develop the record because he did not obtain plaintiff's preschool records; (2) that the ALJ improperly relied on the consultative examining psychologist's report in finding that plaintiff had a less than marked limitation in acquiring and using information; and (3) that the ALJ should have found marked limitations in the areas of attending and completing tasks and interacting with others. (Dkt. 18).

**Developing the Record**

Plaintiff argues that the ALJ would have found greater limitations in the domains of acquiring and using information if he had obtained plaintiff's school records. Id. Plaintiff contends that the ALJ's duty to develop the record was triggered by plaintiff's counsel's statement that he had requested the records but had not been able to obtain them. Id.

In this case, both plaintiff's counsel and the ALJ requested the records from plaintiff's preschool. (R. 43). At the hearing, plaintiff's counsel reported that the preschool "told my client's mother that any records regarding the claimant have been destroyed in a flood." Id.

Because disability proceedings are nonadversarial, "the ALJ bears responsibility for ensuring that 'an adequate record is developed during the disability hearing consistent with the issues raised.'" Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) (quoting Henrie v. U.S. Dept. of Health & Human Svcs., 13 F.3d 359, 360-61). Accordingly, the ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing."[5] Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir. 2008) (citations omitted). However, "[s]everal preconditions inform" that duty. Wall v. Astrue, 561 F.3d 1048, 1063 (10th Cir. 2009). Among them is the principle that, in the case of represented claimants, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored." Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997) (cited in Maes, 522 F.3d at 1096).

After researching Tenth Circuit cases involving missing or destroyed records, the undersigned found two district court cases that are instructive. In the first, the district court

---

[5] The records at issue here are preschool records, not medical records, but in child cases, school records, including preschool records, are considered relevant to the analysis. See 20 C.F.R. § 416.924a(a)(2)(ii).

adopted a magistrate judge's report and recommendation in which the magistrate judge found that the ALJ had satisfied his duty to develop the record where the ALJ subpoenaed a medical evaluation from a VA doctor and subsequently learned from the claimant that the evaluation had been destroyed. See Walsh v. Astrue, 2010 WL 5137597 (W.D.Okla. November 17, 2010) (unpublished) (report and recommendation); Walsh v. Astrue, 2010 WL 5139252 (W.D.Okla. December 10, 2010) (unpublished) (order adopting the report and recommendation in its entirety). In the report and recommendation, the magistrate judge wrote, "[i]t would be incredulous to require the administrative law judge to obtain documents which have since been lost or destroyed, and the record shows that the administrative law judge fulfilled his duty to develop the record." Walsh, 2010 WL 5137597 at *14.

In the second case, plaintiff's counsel advised the ALJ that certain medical records had been destroyed and were not available for the ALJ's review. See Jesse v. Barnhart, 323 F.Supp.2d 1100, 1105 (D.Kan. 2004). Plaintiff's counsel then wrote a letter to the ALJ requesting that, pursuant to the regulations, the ALJ subpoena the doctor to testify at the ALJ hearing. See id. The ALJ did not subpoena the doctor, and the district court judge held that the ALJ's failure to subpoena the doctor constituted "an abuse of discretion" and a failure to develop the record. Id.

Based on plaintiff's counsel's representation to the ALJ, it was reasonable for the ALJ to assume that plaintiff's school records were no longer available. Thus, the only means of acquiring information regarding plaintiff's in-school behavior was through testimony from his teacher(s) or someone else who observed his behavior during the school day.

The regulations provide that "[w]hen it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her

own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses. . . . " 20 C.F.R. § 416.1450(d)(1). Plaintiff's counsel did not file a written request asking the ALJ to subpoena witnesses, as required by the regulations. See 20 C.F.R. § 416.1450(d)(2). Therefore, the Court must determine whether the ALJ should, on his own initiative, have subpoenaed one or more members of the preschool staff to testify at the hearing. After considering the evidence contained in the record, the undersigned recommends a finding that the ALJ was not required to subpoena members of the preschool staff and that the ALJ fulfilled his duty to develop the record.

The administrative record contains the name and address of plaintiff's preschool. (R. 139). However, his last preschool teacher is identified only as "Ms. Tori." Id. This information does not indicate whether the preschool staff had special educational training, such as a degree or teaching certificate, or whether plaintiff's preschool operated more like a daycare center. Moreover, the ALJ had the benefit of the mother's testimony regarding the calls she received from the preschool regarding plaintiff's behavior, and there is no indication that the ALJ disbelieved the mother's statements in this regard. The ALJ also heard testimony regarding plaintiff's expulsion from the preschool, which was counsel's reason for requesting the records in the first place. (R. 43). There is simply no indication in the record, and plaintiff does not argue, that obtaining live testimony from the preschool staff would have provided the ALJ with any new or different information. For these reasons, the undersigned believes that the ALJ was permitted to rely on counsel's presentation of the evidence, and had good reason to do so, and that the ALJ did not violate his duty to develop the record by failing to subpoena employees of plaintiff's preschool. See Hawkins, 113 F.3d at 1167. Accordingly, the undersigned recommends a finding of no error on this issue.

**Reliance on the Consultative Examining Psychologist's Report in the Domain of Using and Acquiring Information**

Plaintiff also argues that the ALJ improperly relied on the consultative examining psychologist's report to find that plaintiff had a less than marked limitation in the area of acquiring and using information. (Dkt. 18). Specifically, plaintiff's counsel contends that there are a number of tasks that plaintiff cannot perform because of his limited ability to acquire and use information, such as bathing himself, dressing himself, reciting his telephone number, reading capital letters, riding a training bicycle, and using scissors. Id. Plaintiff also argues that the ALJ should have relied instead on Dr. Shadid's October 2010 report that plaintiff had "marked difficulty with focus, attention, concentration, and inability to stay on task." Id.

For a child of preschool age, a claimant's ability to acquire and use information is defined as follows:

> listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories allows you to acquire and share knowledge and experience of the world around you.

20 C.F.R. § 416.926a(g)(2)(iii). Bathing and dressing are examples of caring for oneself, a separate domain of functioning. See 20 C.F.R. § 416.926a(k)(2)(iii). Notably, for a child of preschool age, the inability to bathe oneself is not considered a limitation. See id. Similarly, the inability to focus and concentrate is an example of difficulty with attending and completing tasks, not acquiring and using information. See 20 C.F.R. § 416.926a(h)(2)(iii). Therefore, Dr. Shadid's initial diagnosis of plaintiff in October 2012 is not evidence of a limitation in acquiring and using information.

Plaintiff's mother did submit a function report, stating that plaintiff had difficulty using scissors and could not read capital letters. (R. 161). However, the consultative examining psychologist found that plaintiff could perform other tasks cited in the domain of acquiring and using information. (R. 225-29). For example, plaintiff could play with Legos, a toy equivalent to building blocks. (R. 227). Plaintiff was able to explain himself, telling the psychologist that he was going to play with another toy as an explanation for putting away the Legos. Id. Plaintiff also gave an appropriate response of "you're welcome," when the psychologist thanked him for picking up the toys without being asked. Id. The psychologist determined that this behavior was age appropriate and within normal limits. Id. The consultative examining psychologist's opinion is an acceptable medical source, and the ALJ did not err in relying on her report. See 20 C.F.R. § 416.913(a)(2).

**Attending and Completing Tasks and Interacting with Others**

Finally, plaintiff argues that he has a marked limitation in attending and completing tasks and in interacting with others. (Dkt. 18). Plaintiff contends that his condition is not controlled with medication, as evidenced by the changes in his medication and dosage. Id. Plaintiff also contends that the evidence of plaintiff's inability to get along with others is clear and finds the ALJ's determination of a less than marked limitation "bewildering." Id. The Commissioner contends that plaintiff's argument relies too heavily on the mother's testimony and ignores the regulations, which do not permit subjective testimony to meet the statutory standards for disability. (Dkt. 19).

With respect to attending and completing tasks, the ALJ cited the consultative examining psychologist's report, which found that plaintiff did not exhibit any signs of a limitation. (R. 23). The ALJ also relied on the fact that plaintiff's behavior improved on medication. Id. The ALJ

cited both the mother's testimony and the treating psychiatrist's notes. Id. In the area of interacting and relating with others, the ALJ relied on the consultative examining psychologist's report, in which the psychologist opined that plaintiff's "behavior was appropriate and within normal limits." (R. 24).

The Court's role in social security disability cases is to "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." Mays v. Colvin, 739 F.3d 569, 571 (10th Cir. 2014). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted) (internal quotation marks omitted). With respect to the weight of the evidence, the Court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).

Plaintiff's arguments are a request to have the Court reweigh the evidence. The consultative examining psychologist's report is clear, and the ALJ was entitled to rely on that report. The ALJ also relied on the treating psychiatrist's notes, which found that plaintiff's symptoms were controlled by his medication and that his behavior was "much improved." (R. 23, 260-61). Both of these medical opinions include reports from the mother, who stated that plaintiff's behavior improved with medication, and the ALJ specifically cited the mother's statement to the consultative examining psychologist. (R. 23). While there is evidence that it took some time to find the right medication and dosage for plaintiff, the Court cannot reweigh the evidence in order to reach a finding that differs from that of the ALJ's.

Similarly, plaintiff was polite and respectful in his interactions with the consultative examining psychologist. (R. 277). However, plaintiff's mother testified that plaintiff has trouble getting along with other children and sharing toys. (R. 48). The ALJ found that the mother's testimony was not entirely credible in this respect, and he relied on the consultative examining psychologist's report in assessing plaintiff's limitations in interacting with and relating to others. (R. 21-22, 23). Without reweighing the evidence, the undersigned cannot state that the ALJ's findings are not supported by substantial evidence.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## OBJECTION

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 2, 2015.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. See also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir.

1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

      SUBMITTED this 18th day of December, 2014.

_____
T. Lane Wilson
United States Magistrate Judge