# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMANDA WELLS on behalf of C.D.W., a minor child, ) ) ) Plaintiff, ) ) v. ) ) CAROLYN W. COLVIN, Acting ) Commissioner, Social Security ) Administration, ) ) Defendant. ) | Case No. 13-CV-530-GKF-TLW |

## OPINION AND ORDER

Before the court is the Report and Recommendation of United States Magistrate Judge T. Lane Wilson on the judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits [Dkt. #23] and the Objections thereto filed by plaintiff, Amanda Wells o/b/o C.D.W., a minor ("Wells"). [Dkt. #24]. The Magistrate Judge recommended the Commissioner's decision be affirmed. Wells objects to the Magistrate Judge's Report and Recommendation, arguing (1) the ALJ improperly discredited testimony from CDW's mother, (2) the ALJ failed to make credibility findings regarding three third-party statements, (3) the ALJ did not develop the record fully by failing to seek records from CDW's daycare or preschool, (4) the ALJ underestimated CDW's limitations in the domains of acquiring and using information and interacting with others, and (5) the ALJ erred in relying on the opinion of consulting examiner, Dr. Johna Kay Smasal. For the reasons below, the court adopts the Magistrate Judge's recommendation and affirms the ALJ's denial of benefits.

## I. Procedural History

On November 10, 2010, Wells filed a protective application for supplemental security income on behalf of CDW, with an alleged onset date of October 18, 2010. [R. 104-09]. The Social Security Administration denied the applications initially and on reconsideration. [R. 58, 68]. ALJ Richard J. Kallsnick held an administrative hearing on May 31, 2012. [R. 40]. By decision dated June 15, 2012, the ALJ found that CDW was not disabled. [R. 27]. On June 21, 2013, the Appeals Council denied review. [R. 1-4]. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." However, even under a *de novo* review of such portions of the Report and Recommendation, this court's review of the Commissioner's decision is limited to a determination of "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). Even if the court would have reached a

different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992).

### III. Credibility of CDW's Mother

Wells, CDW's mother, argues the ALJ erred in determining that her testimony was "not entirely credible" based on statements in the record that CDW's condition improved with medication. [Dkt. #24, p. 1-2]. Credibility determinations are "peculiarly the province of the finder of fact," in this case, the ALJ. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). When making credibility determinations, ALJs may consider a number of factors, including:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ need not consider all of these factors in each case, as long as he "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Porter v. Colvin*, 525 F.App'x 760, 764 (10th Cir. 2013) (unpublished) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The specific reasons articulated by the ALJ "should be closely and affirmatively linked to substantial evidence," may not simply recite the factors that are described in the regulations, and should be more than a conclusion dressed up "in the guise of findings." *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004).

In this case, the ALJ noted a discrepancy between the mother's testimony regarding CDW's behavior and statements by CDW's treating psychiatrist and by CDW's mother herself indicating that CDW's symptoms are much improved by medication. [R. 21-22, Dkt. #15-2, pp. 22-23 (citing R. 227, Dkt. #15-7, p. 49; R. 261-63, Dkt. #15-7, pp. 83-84)]. This specific

3

evidence goes to the consistency of the mother's nonmedical testimony with objective medical evidence from the treating psychiatrist, and to the mother's general consistency in her statements, one of the "subjective measures of credibility that are peculiarly within the judgment of the ALJ." *Kepler*, 68 F.3d at 391. These discrepancies provide substantial evidence for the ALJ's determination that CDW's mother was not credible to the extent her testimony conflicted with the finding that CDW does not have an impairment. [*See* R. 21]. Wells's invocation of other statements in the psychiatric record relating bad behavior by CDW is not persuasive because those statements clearly refer to periods when CDW was not taking medication. [*See* R. 262-63]. Wells's objection is overruled.

### IV. Credibility of Third-Party Statements

Wells argues the ALJ failed to make specific credibility findings for three third-party statements submitted by CDW's aunt and two friends of his mother. [Dkt. #24, p. 2-3]. "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). And yet specific, written findings about the credibility of each witness are not necessarily required, particularly when the written decision reflects the ALJ considered the testimony. *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) ("the ALJ is not required to make a written finding about each witness's credibility"). A specific credibility determination also is not required for statements that are cumulative of other evidence or are not "uncontroverted." *See Clifton*, 79 F.3d at 1009 (ALJ must discuss *uncontroverted* evidence not relied on); *Brescia v. Astrue*, 287 F.App'x 626, 630-31 (10th Cir. July 8, 2008) (unpublished) (no error for failing to mention specifically a third party report by claimant's sister that was "largely cumulative of [claimant's] testimony and written

statements); *see also Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (ALJ committed reversible error by failing to make a specific credibility determination for a third-party statement by the claimant's wife because that testimony was "not only uncontroverted," but also served to bolster medical evidence in the record).

In his decision, the ALJ makes no mention of the three third-party statements, other than generally noting the ALJ has considered all of the evidence, including information from sources such as "family members or friends." [R. 20]. However, the letters are largely cumulative of the testimony of CDW's mother. In fact, the record shows the ALJ received copies of the letters, and counsel for CDW referenced the letters before asking CDW's mother to testify generally as to CDW's bad behavior, as described in those letters. [R. 47, *et seq.*]. Furthermore, the information in the letters is not uncontroverted, as CDW's treating psychiatrist reported that medication led to much improvement in CDW's behavior. [R. 261, 263]. In addition, one of the letters, from CDW's aunt, describes bad behavior by CDW in "August or September" 2011, which preceded by several months the April 2012 visit with the treating psychiatrist that led to the report regarding the positive effects of medication. [R. 176]. Although the other two letters from friends of CDW's mother, both dated in May 2012, do not specify when the observed bad behavior occurred, neither is inconsistent with the medical evidence relied on by the ALJ. Thus, these letters are not uncontroverted evidence requiring a specific credibility determination by the ALJ. Wells's objection is overruled.

**V. Preschool Records**

Wells argues the ALJ erred in failing to obtain records from CDW's preschool. In this objection, Wells does not accurately represent the facts. Specifically, Wells argues the "ALJ did not seek to obtain any records whatsoever from CDW's daycare or preschool." [Dkt. #24, p. 4].

To the contrary, as the Magistrate Judge noted [Dt. #43, p. 12], the transcript of the hearing before the ALJ reveals both counsel *and the agency* attempted to obtain records from the school. Here are the words of none other than CDW's counsel:

> Your honor . . . I have tried to get the records from the school. It's the day-school. Social Security has tried to get some records, too, and they didn't respond to Social Security. And they told my client's mother that any records regarding the claimant have been destroyed in a flood . . . . [R. 42].

Wells also complains the ALJ "held it against" CDW that there were no records submitted from the preschool. However, the ALJ merely noted that no preschool records were submitted at relevant points in the functional equivalence analysis. [R. 22-23]. Nowhere does the ALJ even remotely suggest he considers this absence of evidence to be evidence of the absence of a disability.

The Magistrate Judge correctly stated the law, which is that the ALJ does not have an obligation to obtain records that do not exist. [Dkt. #23, p. 12-13 (citing *Walsh v. Astrue*, 2010 WL 5137597 (W.D.Okla. November 17, 2010) (unpublished))]. The ALJ ordinarily is entitled to rely on the claimant's counsel to structure and present the claimant's case. *Hawkins v. Chater*, 113 F. 3d 1162, 1167 (10th Cir. 1997). And yet, the ALJ may, either upon claimant's request or on his own initiative, subpoena witness testimony "when it is reasonably necessary for the full presentation of a case." 20 C.F.R. § 416.1450(d)(1). Such a subpoena could be appropriate in cases where records have been lost or destroyed and the testimony is likely to provide new and different information from that in the record.

As the Magistrate Judge noted, in this case CDW's counsel did not request such a subpoena, and there is no evidence in the record suggesting that the staff at CDW's preschool could provide any new or different information from that presented in the testimony of CDW's mother. The ALJ fulfilled his duty to develop an adequate record. Wells' objection is overruled.

## VI. Information and Interaction Limitations

Wells argues the ALJ erred in finding CDW had less than marked limitations in the domains of acquiring and using information and interacting with others. A "marked" limitation is more than a moderate limitation, but less than an extreme limitation. 20 C.F.R. § 416.926a(e)(2)(i). It is the equivalent of operating at two standard deviations below the mean. *Id*.

As to the acquisition and use of information, the ALJ relied on the report of psychologist Dr. Johna Kay Smasal, who examined CDW on April 8, 2011. [R. 225 *et seq.*]. The ALJ found that this report contained no evidence of limitation in CDW's ability to acquire and use information. [R. 23]. In Wells's objection, she cites evidence mostly unrelated to the domain of acquiring and using information, including difficulties with focus, attention, concentration, and inability to stay on task, which relate to the domain of attending to and completing tasks. Wells cites the function report she filled out roughly five months before CDW's visit with Dr. Smasal, in which she checked boxes for several limitations including two relevant to the acquisition and use of information. Specifically, Wells reported that CDW could not read capital letters of the alphabet and could not use scissors fairly well. [R. 161-62].

In her objections, Wells does not provide any specific arguments to support her contention that the ALJ should have found a marked limitation in CDW's ability to interact with others.

The two reported symptoms regarding capital letters and scissors in the Child Function Report may be evidence of some limitation, but they do not amount to proof of a marked limitation, especially in light of Dr. Smasal's conclusion that CDW's behavior was "appropriate

and within normal limits." [R. 227]. In any event, the court "will not reweigh the evidence or substitute [its] judgment for the [ALJ's]." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The record contains substantial evidence supporting the ALJ's determination that CDW is not markedly limited in his abilities to acquire and use information and to interact with others. Wells's objection is overruled.

## VII. Consultative Examination

Wells argues the ALJ erred by relying on the consultative examination of Dr. Smasal. [R. 225-29]. Specifically, Wells cites several authorities for the proposition that consultative examinations are not as reliable as the opinions of a treating source. Wells also argues that Dr. Smasal's report does not specifically address CDW's ability to interact with others.

Wells's first point is irrelevant; the second is misleading. While it is certainly true that the opinions of a treating source are more reliable than those of a consulting examiner, *see* 20 C.F.R. § 416.927(c)(1), (2), Wells does not cite any other sources of information, including a treating source, that might contradict Dr. Smasal's conclusions. In the absence of contradictory conclusions by a treating source, the conclusions of a consulting examiner can provide substantial evidence.

Although Dr. Smasal's report does not invoke the specific regulatory language defining the domain of interacting with others, her report provides facts relevant to CDW's ability to interact with others. [R. 227]. As part of a behavioral examination, Dr. Smasal describes her interactions with CDW while the latter conversed and played with different toys in her office. [*Id.*]. Her conclusion was that CDW's behavior was "appropriate and within normal limits." [*Id.*]. Dr. Smasal's report provides substantial evidence for the ALJ's conclusion that CDW is not markedly limited in his ability to interact with others. Wells's objection is overruled.

8

## VIII. Conclusion

For the reasons set forth above, Wells's Objections to the Magistrate Judge's Report and Recommendation [Dkt. #24] are overruled, the Magistrate Judge's Report and Recommendation [Dkt. #23] is adopted, and the decision of the Commissioner is affirmed.

ENTERED this 24th day of February, 2015.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT